## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| **TOM PHOMMAKHOT,** )<br><br>)<br>**Plaintiff,** )<br>)<br>**v.** )<br>)<br>**ANDREW M. SAUL,** )<br>**COMMISSIONER OF SOCIAL SECURITY** )<br>**ADMINISTRATION,** )<br>)<br>**Defendant.** ) | **Civil Action No. 3:19-cv-00168**<br>**Judge Richardson / Frensley** |

### REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 17. Plaintiff has filed an accompanying Memorandum. Docket No. 17-1. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 18.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

# I. INTRODUCTION

Plaintiff filed his applications for DIB and SSI on March 1, 2016 and March 4, 2016, respectively, alleging that he had been disabled since October 1, 2012, due to diabetes, fatigue, "breathing issues," "thyroidism," hypertension, and gall bladder issues.[1] Docket No. 15, Attachment ("TR"), TR 209-214, 202-08, 248. Plaintiff's applications were denied both initially (TR 66 [2], 69) and upon reconsideration (TR 113, 112). Plaintiff subsequently requested (TR 133-34) and received (TR 31-55) a hearing. Plaintiff's hearing was conducted on January 29, 2018, by Administrative Law Judge ("ALJ") Shannon H. Heath. TR 31. Plaintiff and Vocational Expert ("VE"), Kenneth Boaz, appeared and testified. *Id*.

On June 22, 2018, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 14-30. Specifically, the ALJ made the following findings of fact:

1.      The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2.      The claimant has not engaged in substantial gainful activity since August 23, 2013, the day after the initial determination on his prior Title II claim (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.      The claimant has the following severe impairments: hepatitis B (20 CFR 404.1520(c) and 416.920(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity

---

[1] In his "prior disability report," Plaintiff's alleged onset date was September 15, 2018 and his alleged disability was due to diabetes, thyroid, hypertension, cirrhosis, and gallstone. TR 219, 224.

[2] A prior initial Title II disability determination was also submitted. TR 64.

2

of one of the listed impairments in 20 CFR Part 404,
Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525,
404.1526, 416.920(d), 416.925 and 416.926).

5.      After careful consideration of the entire record, the
        undersigned finds that the claimant has the residual
        functional capacity to perform medium work as defined in
        20 CFR 404.1567(c) and 416.967(c) with only occasional
        climbing of ladders, ropes, and scaffolds and frequent
        kneeling, crouching, and crawling.

6.      The claimant is capable of performing his past relevant
        work as a warehouse laborer. This work does not require
        the performance of work-related activities precluded by the
        claimant's residual functional capacity (20 CFR 404.1565
        and 416.965).

7.      The claimant has not been under a disability, as defined in
        the Social Security Act, from October 1, 2012, through the
        date of this decision (20 CFR 404.1520(f) and 416.920(f)).

TR 20-24.

On July 19, 2018, Plaintiff timely filed a request for review of the hearing decision. TR

187-90.  On January 2, 2019, the Appeals Council issued a letter declining to review the case

(TR 1-8), thereby rendering the decision of the ALJ the final decision of the Commissioner.

This civil action was thereafter timely filed, and the Court has jurisdiction.  42 U.S.C. § 405(g).

If the Commissioner's findings are supported by substantial evidence, based upon the record as a

whole, then these findings are conclusive.  *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and

testimonial evidence of record.  Accordingly, the Court will discuss those matters only to the

extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process.  *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991).  The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision.  *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion."  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached.  *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).  If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined.  *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

> (1)      If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

> (2)      If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

> (3)      If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of

the "listed" impairments or its equivalent.[3]  If a listing is met or equaled, benefits are owing without further inquiry.

(4)     If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.

(5)     The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e.g.,* 20 CFR §§ 404.1520, 416.920.  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule.  *Moon*, 923 F.2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2).  *See also Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 281-82 (6th Cir. 1985).  Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination.  *Id.*  In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is

_____

[3] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

typically obtained through vocational expert testimony.  *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere.  *See* 42 U.S.C. § 423(d)(2)(B).

### C.  Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ improperly: (1) evaluated the opinions of the State agency medical consultants and the nurse practitioner; and (2) determined that Plaintiff was capable of performing his past relevant work. Docket No. 17-1, pp. 6-7. Plaintiff additionally argues that the Social Security Act should be liberally construed in favor of a plaintiff. Docket No. 17-1, pp. 7-8, *citing Walston v. Gardner*, 381 F.2d 580 (6th Cir. 1967); *Dean v. Flemming*, 180 F. Supp. 553 (E.D.Ky. 1959); *Lietz v. Fleming*, 264 F.2d 311, 313 (6th Cir. 1959)).  Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is

overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

## 1. The ALJ's Evaluation of the Opinions of the State Agency Medical Consultants and the Nurse Practitioner

Noting that there was no physical consultative examination in the record, Plaintiff argues that the ALJ incorrectly evaluated the medical opinions from the State agency consultants and the nurse practitioner. Docket No. 17-1, p. 7. Specifically, Plaintiff argues the ALJ improperly relied on the opinions of the State agency medical consultants since they were not specialists in the area of Plaintiff's impairments and they did not have the medical records from the Gastroenterologist, Dany Shamoun, as part of the record before them when opining. *Id.* Additionally, Plaintiff asserts that the ALJ failed to properly evaluate the opinion of his "longstanding Nurse Practitioner [who] completed a medical source statement which was also signed by his supervising medical doctor supporting this claim." *Id.* Plaintiff contends that the ALJ should: (1) adopt and not reject the treating source's opinion even if the ALJ does not give it controlling weight; and (2) evaluate the treating source opinions under 20 CFR 404.1527 and 416.927. *Id.* at 8-9, *quoting* SSR 96-2p(6), 1996 WL 374188 at *4 (July 2, 1996). Plaintiff contends that the ALJ should have given more weight to his nurse practitioner's opinion instead of the State agency consultants' opinions. *Id.*

As to Plaintiff's notation that there was no physical consultative examination in the

record, Defendant responds that despite inconsistent evidence contained within the record, there is no requirement for the agency to obtain a consultative examination, the ALJ determined there was sufficient evidence upon which to make a determination, and ordering a physical consultative examination was not required. Docket No. 18, p. 4. Ultimately, Defendant argues the ALJ's determination was properly supported by the record and no consultative examination was needed. *Id.* at 9.

Defendant also responds that the ALJ properly evaluated the conflicting medical evidence. Docket No. 18, pp. 5-6. Regarding the State agents' opinions, Defendant maintains the ALJ was permitted to give their opinions more weight because Sixth Circuit precedent states "the ALJ may give 'great' weight to the opinions of agency non-examining doctors when these opinions are supported by the record as a whole." *Id.* at 6, *citing Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). Defendant also responds that the ALJ properly noted that evidence was submitted after the agents opined, but that Plaintiff's conditions were "relatively stable," so the agents' opinions remained reliable and consistent. *Id.* at 6-7.

Defendant additionally maintains that the ALJ properly evaluated the nurse practitioner's opinion and acknowledged that Dr. Helton, the doctor who cosigned the nurse's statement, did not actually treat Plaintiff. *Id.* at 7-8. Defendant argues that the ALJ did not need to weigh the opinion of a nurse the same as that of a doctor and further did not need to accord this opinion great weight because it was inconsistent with the record. *Id.* at 8. Defendant specifically notes the nurse practitioner's statement was inconsistent with "Plaintiff's lack of complaints concerning the abilities highlighted in the report." *Id., citing* TR 23. Defendant further asserts that the limitations included in the nurse practitioner's opinion, specifically the viral hepatitis B and

upper right quadrant pain, were not supported by the record. *Id.* at 8. In relation to the lack of support for the hepatitis B limitations, Defendant argues "Plaintiff's statements about the severity of his hepatitis B were inconsistent with records that showed good control on medications . . . ." *Id.* Defendant therefore contends that the ALJ correctly evaluated the opinions of the nurse practitioner and the State agents. *Id.* at 5-9.

With respect to whether a physical consultative examination was necessary, the Sixth Circuit has repeatedly held that the Commissioner is not required to order a consultative examination in order to assist a plaintiff in establishing disability. *See, e.g., Moon v. Sullivan*, 923 F.2d 1175, 1182-83 (6th Cir. 1990); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986); *Kimbrough v. Sec'y of Health & Human Servs.*, 801 F.2d 794, 797 (6th Cir. 1986). Instead, the Commissioner will order a consultative examination "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient" to render a decision on the claim. 20 CFR § 404.1519a(b). The Commissioner may order a consultative examination "to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis" when: (1) the additional evidence needed is not contained in the medical records; (2) the evidence from the medical sources cannot be obtained for reasons beyond a plaintiff's control, such as death or noncooperation of a medical source; (3) highly technical or specialized medical evidence is needed and not available from other medical sources; or (4) there is an indication in a plaintiff's condition that is likely to affect his/her ability to work, but the then-current severity of his/her impairment is not established. *Id.* None of the enumerated conditions are present in the case at bar, and the ALJ had sufficient evidence upon which to render a decision. To the extent that Plaintiff argues that the ALJ should have ordered a physical

consultative examination, the Regulations do not so require; any such argument by Plaintiff fails.

Turning to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. . . .
>
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion . . . .
>
> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
>
> (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
>
> . . .

20 CFR § 416.927(c) (emphasis added).  *See also* 20 CFR § 404.1527(c).

The ALJ must articulate the reasons underlying her decision to give a medical opinion a specific amount of weight.[4]  *See, e.g.,* 20 CFR § 404.1527(d); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight.  SSR 96-2p.

The Sixth Circuit has held that, "[p]rovided that they are based on sufficient medical data, the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002), *quoting Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)).  If the ALJ rejects the opinion of a treating source, however, she is required to articulate some basis for rejecting the opinion.  *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).  The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 CFR § 404.1502.

---

[4] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 CFR § 1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record.  *See, e.g., Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006).

The ALJ in the instant action discussed the medical opinion of Dr. Helton as follows:

> Michael Helton, MD, the claimant's treating physician, submitted a
> medical source statement indicating the claimant is seriously
> limited in most of the abilities required in physical work (15F).
> However, the statement itself was completed by the nurse
> practitioner who treats the claimant and not Dr. Helton. Treatment
> records clearly indicate that the actual provider is the nurse
> practitioner and that Dr. Helton does not actually see the claimant.
> He merely signs off on the nurse's notes after the fact. In addition,
> the undersigned notes that the medical source statement is clearly
> not consistent with the evidence of record, which shows that the
> claimant has made few complaints concerning his abilities to
> perform the actions referred to in the medical source statement and
> there is absolutely no support in the record for the degree of
> limitation indicated. The undersigned accords this opinion little
> weight.

TR 23.

An ALJ should accord greater weight to the opinion of treating physicians than to the

opinion of others as long as that opinion is supported by medically acceptable clinical and

laboratory diagnostic techniques, and is consistent with the evidence of record.  As explained

above, however, Dr. Helton did not actually treat Plaintiff, but rather, signed off on the nurse's

notes after the fact and Dr. Helton's opinion contradicts other substantial evidence in the record.

As the Regulations state, the ALJ is not required to give controlling weight to a physician's

evaluation when that evaluation is inconsistent with other substantial evidence in the record.  *See*

20 CFR § 416.927(d)(2); 20 CFR § 404.1527(d)(2).  Instead, when there is contradictory

evidence, the opinion is weighed against the contradictory evidence under the criteria listed

above.  *Id.*  When the opinions are inconsistent with each other, the final decision regarding the

weight to be given to the differing opinions lies with the Commissioner.  20 CFR §

416.927(e)(2).

Because Dr. Helton did not actually examine Plaintiff and because Dr. Helton's opinion was inconsistent with other substantial evidence in the record, the Regulations do not mandate that the ALJ accord the medical source statement completed by the nurse practitioner and signed off on by Dr. Helton controlling weight.

Additionally, with regard to the consideration of opinions rendered by nurse practitioners, the Regulations provide that the ALJ may properly:

> use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include, but are not limited to -
>
> (1) Medical Sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists).

20 CFR § 404.1513(d).

The ALJ is therefore permitted the consider the medical source statement completed by the nurse practitioner; however, as mentioned above, the ALJ is not required to give great weight to this opinion if it is inconsistent with the record. As noted, the ALJ determined that the opinion written by the nurse practitioner and signed by Dr. Helton was inconsistent with, and not supported by, the record. In so finding, the ALJ also discussed the medical opinions of the State agency medical consultants as follows:

> The undersigned considered the opinion evidence. The State agency medical consultants opined that that [*sic*] claimant is able to perform medium work with additional postural limitations (7A, 8A; 9A; 10A; 11A). The consultants are medical experts familiar with program rules and the expected limitations resulting from impairments. These experts had the opportunity to review a substantial part of the medical evidence, and evidence received after they rendered their opinions shows the claimant to be on a stable, steady, course. It does not support a finding that the

claimant's condition is materially different now than it was at a time the opinions were rendered. The claimant's conservative treatment, consisting primarily of medications, supports the opinions.

TR 23.

An ALJ may consider the opinion of a non-examining physician designated by the Secretary in determining whether a claimant has medically determinable impairments. *Reynolds v. Sec'y of Health & Human Servs.*, 707 F.2d 927, 930 (6th Cir. 1983). The ALJ's consideration of the opinions of the State agency medical consultants was proper. Moreover, the ALJ appropriately acknowledged that the non-examining physicians rendered their opinions without receiving all of the medical evidence, but stated these opinions were still consistent with the record as a whole because the subsequent evidence demonstrated that Plaintiff was on a "stable, steady, course." *Id.*

The ALJ properly evaluated the opinions of the State agency physicians and the nurse practitioner/Dr. Helton. Accordingly, Plaintiff's argument on this point fails.

## 2. The ALJ's Determination that Plaintiff was Capable of Performing His Past Relevant Work

Plaintiff argues the ALJ's determination that he could perform his past relevant work was inconsistent with the record and with the ALJ's own statements and therefore was an improper determination. Docket No. 17-1, p. 6. As support for this assertion, Plaintiff explains that in the ALJ's RFC explanation, the ALJ states, "the undersigned has limited the claimant to a reduced range of medium work with additional postural limitations" (TR 23), but then determined that Plaintiff could return to his past relevant work, which the VE stated was medium work (TR 40). Docket No. 17-1, p. 6. Additionally, Plaintiff argues the ALJ stated more contradictory

15

determinations when she "noted claimant's hepatitis B to be a ***severe impairment and that claimant's impairment significantly limits the claimant's ability to perform basic work activities as required by SSR 85-28*** (TR 20) . . . [and] noted claimant has medically determinable impairments of a history of **right shoulder impingement, hypertension, GERD, hyperthyroidism, and diabetes mellitus** (TR 22), but then opined claimant could perform his past relevant work as a warehouse laborer at the medium exertional level. (TR 21-24)." Docket No. 17-1, p. 6-7 (emphasis original).

Plaintiff additionally maintains that the ALJ's determination that Plaintiff could return to his past relevant work was inconsistent with the medical opinions. *Id.* at 7. Specifically, Plaintiff notes the State agency medical consultants "**opined the claimant had '*additional postural limitations*' than those found in the medium work category**" (TR 23) and they did not find Plaintiff could perform a full range of medium work. Docket No. 17-1, p. 7 (emphasis original). Plaintiff notes that neither the ALJ nor Dr. Helton found he could perform a full range of medium work, however, the ALJ nevertheless determined that Plaintiff could return to his past relevant work, which was categorized by the VE as full range of medium work. *Id*. Plaintiff argues there is no support for this conclusion. *Id.* at 6-7.

Defendant responds that "substantial evidence supported the ALJ's finding that Plaintiff could perform his past work as a warehouse laborer." Docket No. 18, p. 9, *citing* TR 24. Specifically, Defendant maintains that "the ALJ may, as was done here, use vocational expert testimony at step four of the sequential evaluation to assist in determining whether an individual can perform his or her past relevant work," and that in this case, the ALJ's determination was supported by the VE's testimony in response to hypothetical questions which appropriately

included the restrictions the ALJ found to be supported by the record. Docket No. 18, p. 10, *citing Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007). Additionally, Defendant argues the ALJ's determination was supported by the medical opinions the ALJ found to be credible and the limitations found by the State agents were properly included in the RFC. *Id.* at 6. Defendant concludes the ALJ's determination that Plaintiff could return to his past relevant work was consistent with the record. *Id.* at 5-6, 10-11.

When determining whether Plaintiff could return to his past relevant work or work in other capacities, the ALJ in the instant action posed several hypothetical questions to the VE during Plaintiff's hearing. TR 51-53. The ALJ first queried:

> Q    For purposes of all our hypothetical[s], I'd ask you to assume an individual of the same age, education, and past work experience as you have previously described in this case. In our first hypothetical, we have an individual limited to medium work with only occasional climbing of ladders, ropes, or scaffolds, and frequent kneeling, crouching, and crawling. Would that individual be able to perform any of the claimant's past work?
>
> A    The past work as a warehouse laborer - - what did you have for kneeling, Your Honor?
>
> Q    Frequent.
>
> A    He can do the past work.

TR 51.

The ALJ then modified the hypothetical question and queried:

> Q    In hypothetical number two, we have an individual that would be limited to light work. This individual should not climb ladders, ropes, or scaffolds; could occasionally climb ramps or stairs; could occasionally crawl; could frequently

kneel or crouch. This individual should also avoid concentrated exposure to unprotected heights and moving machinery. Would that individual be able to perform the claimant's past work?

A    He would not because of the ladders in the warehouse. There would be occasional use of the ladders, and so he could not perform past work.

Q    Okay. Would this individual be able to perform other types of work activity?

A    Yes, Your Honor. One example would be an assembler in small products. The *DOT* is 706.684-022, light, SVP of 2, unskilled, with 180,000 in the national economy. Another example is a folder in laundry. The *DOT* is 369.687-018, light, SVP of 2, unskilled, with 42,000 in the national economy. And then finally a monogram machine tender, and that's 583.685-046, light, SVP of 2, unskilled, with 80,000 in the national economy.

TR 52.

The ALJ again modified the hypothetical question and queried:

Q    In hypothetical number three, we have an individual that can lift and carry five pounds occasionally, stand and walk for less than two hours and sit for less than two hours. Would that basic exertional profile allow the individual to perform the claimant's past work?

A    No, Your Honor. Standing and sitting would be less than a four-hour day. Plus lifting only five pounds occasionally, that would preclude any past work or any other work in the national economy.

TR 52-53.

The ALJ then queried:

Q    And has your testimony consistent [*sic*] with the *DOT*?

A    Yes, Your Honor.

TR 53.

As can be seen, the ALJ in the case at bar posed several hypothetical questions to the VE, each incorporating different combinations of exertional and nonexertional limitations alleged by Plaintiff and/or contained within the record. TR 51-53. The ALJ ultimately determined that Plaintiff retained the following RFC:

> . . . the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) with only occasional climbing of ladders, ropes, and scaffolds and frequent kneeling, crouching, and crawling.

TR 21.

The limitations in the RFC must be consistent with the limitations included in Plaintiff's past relevant work if the ALJ determines Plaintiff can return to that work. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In the instant case, Plaintiff's past relevant work was categorized by the VE as a warehouse laborer, DOT #922.687-058. TR 40, 51. DOT #922.687-058 is described as follows:

> Performs any combination of following tasks to receive, store, and distribute material, tools, equipment, and products within establishments: Reads production schedule, customer order, work order, shipping order, or requisition to determine items to be moved, gathered, or distributed. Conveys materials and items from receiving or production areas to storage or to other designated areas by hand, handtruck, or electric handtruck. Sorts and places materials or items on racks, shelves, or in bins according to predetermined sequence, such as size, type, style, color, or product code. Sorts and stores perishable goods in refrigerated rooms. Fills requisitions, works orders, or requests for materials, tools, or other stock items and distributes items to production workers or assembly line. Assembles customer orders from stock and places orders on pallets or shelves, or conveys orders to packing station or shipping department. Marks materials with identifying information,

using stencil, crayon, or other marking device. Open bales, crates, and other containers, using handtools. Records amounts of materials or items received or distributed. Weights or counts items for distribution within plant to ensure conformance to company standards. Arranges stock parts in specified sequence for assembly by other workers. May use computer to enter records. May compile worksheets or tickets from customer specifications [ORDER DETAILER (clerical) 221.387-046]. May drive vehicle to transport stored items from warehouse to plant or to pick up items from several locations for shipment. May complete requisition forms to order supplies form other plant departments. May prepare parcels for mailing. May maintain inventory records. May restock aircraft commissary supplies, such as linens, glasses, emergency kits, and beverages, and be designated Commissary Agent (air trans.). May be known according to specific duty performed as Cloth-Bin Packer (textile); Cooler Worker (dairy products); Order Filler (any industry); Produce Clerk (retail trade) II; Tool Chaser (any industry).

GUIDE FOR OCCUPATIONAL EXPLORATION: 05.09.01

STRENGTH: Medium Work - Exerting 20 to 50 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or 10 to 25 pounds of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) and/or greater than negligible up to 10 pounds of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Light Work.

. . .

Climbing: Occasionally - Exists up to 1/3 of the time

. . .

Kneeling: Occasionally - Exists up to 1/3 of the time
Crouching: Frequently - Exists from 1/3 to 2/3 of the time
Crawling: Not Present - Activity or condition does not exist

*DICOT 922.687-058*, DICTIONARY OF OCCUPATIONAL TITLES (4th ed. 2016).

As mentioned above, the limitations included in the RFC were "occasional climbing of

ladders, ropes, and scaffolds and frequent kneeling, crouching, and crawling." TR 21. These limitations are consistent with DOT 922.687-058. In the DOT, climbing is described as occasional, kneeling is occasional, crouching is frequent, and crawling is not present. *DICOT 922.687-058*, DICTIONARY OF OCCUPATIONAL TITLES (4th ed. 2016). Therefore, Plaintiff's limitations as described in the RFC are consistent with the limitations in the DOT 922.687-058.[5] Moreover, Plaintiff's limitations do not prevent him from returning to his past relevant work.

Additionally, Plaintiff argues that the ALJ's step two determinations are inconsistent with the ALJ's finding that Plaintiff can return to his past relevant work. The ALJ's step two finding is as follows:

> The claimant has the following severe impairment: hepatitis B (20 CFR 404.1520(c) and 416.920(c)).

TR 20.

The ALJ explained this findings as follows:

> The above medically determinable impairment significantly limits the claimant's ability to perform basic work activities as required by SSR 85-28.
>
> The undersigned finds that the claimant has medically determinable impairments of a history of right shoulder impingement, hypertension, gastroesophageal reflux disease (GERD), hyperthyroidism, and diabetes mellitus. The claimant has alleged these impairments or the medical record indicates that the claimant has been diagnosed with those impairments, and the medical record indicates that they are being treated and controlled or are asymptomatic. Moreover, there is no indication in the

---

[5] Plaintiff can frequently kneel based on the RFC and the DOT 922.687-058 only requires occasional kneeling, so Plaintiff can kneel more than required. TR 21; *DICOT 922.687-058*, DICTIONARY OF OCCUPATIONAL TITLES (4th ed. 2016).

> medical record that these impairments would impose more than
> minimal work-related functional limitations for 12 or more
> months. Accordingly, these impairments are not severe as defined
> by the regulations.

*Id.*

The ALJ's determination that Plaintiff's hepatitis B is a severe impairment is consistent with the finding that Plaintiff can return to his past relevant work, DOT #922.687-058, because this severe impairment does not include any additional limitations that are not already included in the RFC. Additionally, in the ALJ's discussion of the impairments that the ALJ did not find severe (right shoulder impingement, hypertension, gastroesophageal reflux disease (GERD), hyperthyroidism, and diabetes mellitus), the ALJ states, "the medical record indicates that they are being treated and controlled or are asymptomatic." *Id.* The ALJ adds, "there is no indication in the medical record that these impairments would impose more than minimal work-related functional limitations for 12 or more months." *Id.* Therefore, these impairments do not add any additional limitations that were not included in Plaintiff's RFC or limitations that would prevent Plaintiff from returning to his past relevant work. The ALJ is permitted to determine an impairment is severe at step two and still decide Plaintiff can return to his past relevant work at step four, as a step two determination of severity utilizes a different standard that is a de minimus hurdle necessary in order to proceed throughout the sequential evaluation. *See, e.g.,* 20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).[6]

Additionally, the ALJ's RFC determination was supported by the State agents' opinions and the limitations included in their opinions were consistent with the DOT. TR 23. At both the

---

[6] If an ALJ finds that a Plaintiff does not have a severe impairment at step two, then the evaluation process stops. *Id.*

initial and reconsideration levels, the agents opined that Plaintiff could occasionally climb

ladders, ropes, and scaffolds and could frequently kneel, crouch, and crawl. TR 76, 86, 97, 108.

These opinions were consistent with the limitations of Plaintiff's past relevant work, DOT

#922.687-058. As previously mentioned, the DOT states this occupation contains the following

limitations: (1) occasional climbing; (2) occasional kneeling; (3) frequent crouching; and (4)

crawling is not present. *DICOT 922.687-058*, DICTIONARY OF OCCUPATIONAL TITLES

(4th ed. 2016). Therefore, the agents' opinions support the ALJ's determination that Plaintiff

could perform his past relevant work.

Plaintiff's past relevant work was consistent with the limitations included in the initial

and reconsideration level agents' opinions, the ALJ's step two severity finding, and ultimate

RFC.  The ALJ properly determined that Plaintiff could return to his past relevant work and

supported this determination with the VE's responses and the credible evidence in the record.

Thus, Plaintiff's argument fails.

### 3. Plaintiff's Argument Concerning Liberal Construction

Plaintiff additionally argues that the Social Security Act should be liberally construed in

favor of a plaintiff. Docket No. 17-1, pp. 7-8, *citing Walston v. Gardner*, 381 F.2d 580 (6th Cir.

1967); *Dean v. Flemming*, 180 F. Supp. 553 (E.D.Ky. 1959); *Lietz v. Fleming*, 264 F.2d 311, 313

(6th Cir. 1959)).

Defendant responds that the Social Security Act does not need to be liberally construed

and that "the ALJ and reviewing courts must apply the governing legal standards rather than

construe the law to achieve an outcome favorable to any particular claimant." Docket No. 18, p.

11, *citing Schillaci v. Comm'r of Soc. Sec.*, No. 1:10-CV-637, 2011 WL 5599141, at *3 (W.D.

Mich. Oct. 25, 2011). Defendant maintains that statutory analysis only applies when a statute must actually be construed, which is not the case at hand. *Id.* at 11. Defendant notes that a statute is only liberally construed if it is ambiguous and argues that 'a district court must accept an ALJ's factual findings if substantial evidence supports them." *Id.*. Ultimately, Defendant argues that because "there is no statutory ambiguity at issue, Plaintiff's request for liberal interpretation should be denied." *Id.* at 12.

The issues before the undersigned do not require this Court to "construe" a statute, and the laws upon which the undersigned is to base his decision are not ambiguous; accordingly, Plaintiff's statutory construction argument is inapposite. Moreover, as previously mentioned, the reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). Because the ALJ's decision was supported by substantial evidence, the ALJ's decision should stand.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to

this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); FED. R. CIV. P. 72.

JEFFERY S. FRENSLEY
United States Magistrate Judge